IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 9, 2014

## STATE OF TENNESSEE v. MITCHELL S. POZEZINSKI

**Appeal from the Circuit Court for Montgomery County**
**No. 41201128     Michael R. Jones, Judge**

_____

**No. M2013-01840-CCA-R3-CD - Filed May 30, 2014**

_____

A Montgomery County jury convicted the Defendant, Mitchell S. Pozezinski, for one count of violating the terms of his community supervision for life, and the trial court sentenced him to ten days in jail plus six months of state probation. On appeal, the Defendant contends that the evidence presented is insufficient to support a finding that he knowingly violated the terms of his community supervision for life. After a thorough review of the record and the applicable authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Roger E. Nell, District Public Defender (at trial and on appeal) and Shelby Stack Silvey, Assistant District Public Defender (on appeal) Clarksville, Tennessee, for the appellant, Mitchell S. Pozezinski.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; John W. Carney, Jr., District Attorney General; C. Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from an allegation that the Defendant violated the terms of his

community supervision for life by sitting at a table next to a young child.[1]  At the Defendant's trial on these charges, the parties presented the following evidence: Jeffery Albert Eisner, with the Tennessee Department of Correction, Probation and Parole field services, testified that he was supervising the Defendant at the time of this occurrence.  On October 13, 2011, Mr. Eisner had the Defendant sign a "community supervision for life certificate."  This set forth the terms and conditions of his community supervision for life. Mr. Eisner testified that when he took over the Defendant's supervision, he reviewed all of the supervision rules with the Defendant and reviewed his file.  He and the Defendant ensured that everything was correct in the file and that the Defendant understood the rules of supervision.  Mr. Eisner said he went over each rule in detail with the Defendant.

Mr. Eisner testified that special condition number one of the Defendant's supervision stated that the Defendant agreed: "to abide by the specialized parole conditions for sex offenders as adopted by [the] Board of Probation and Parole."  Mr. Eisner identified a "specialized sex offender directive[]," which was in the Defendant's file and signed and dated by the Defendant on April 14, 2005.  Mr. Eisner said that Rule 9 on that form indicated that the Defendant agreed he would:

> [N]ot enter into contact with any child under 18 or anyone who is unable to give consent due to mental, physical or emotional limitations unless an adult is present whom my officer and my treatment provider have approved in advance in a writing as a chaperone.  I will report all incidental contact with children to the treatment provider and my officer.  I will not date, befriend, reside or unite with anyone who has children under the age of 18, including my own children, without written permission from the treatment provider and my officer.

Mr. Eisner additionally identified a document entitled "specialized probation conditions for sex offenders."  This form was also signed and dated by the Defendant on December 1, 2009. Rule number nine of that form restricted the Defendant from dating, befriending, residing or uniting with anyone who had children under the age of eighteen.  Mr. Eisner identified a third document signed and dated by the Defendant on June 15, 2010, which also included Rule 9, prohibiting contact with minor children.  In addition to the Defendant's signature on the form, the Defendant had initialed next to rule number nine.

---

[1] There was also testimony related to the indictment charging that the Defendant violated the terms of his community supervision for life by wearing his GPS monitor in a manner that violated the written and oral instructions given to him by his supervising officer.  As the jury did not convict the Defendant on this count, we will omit any testimony relevant to that allegation.

Mr. Eisner testified about an incident that occurred on June 19, 2012. Mr. Eisner said that he arrived with two Sheriff's deputies at the Defendant's residence to find the Defendant in an area between his residence and his next door neighbor's residence. The Defendant and a group of people appeared to be having a barbecue meal outside under an awning. Mr. Eisner said he saw the Defendant sitting next to who appeared to be a minor child. He also saw two minor children in the yard about twenty feet behind the Defendant. Mr. Eisner said that it was obvious from the size and stature of the three people that they were children. Mr. Eisner estimated the ages of the children to be more than three but less than eight. Based upon this incident, Mr. Eisner believed the Defendant to be violating the conditions of his probation.

During cross-examination, Mr. Eisner stated that Rule 9 prohibited the Defendant from being in a room where children were present. He agreed that the Defendant was "in the presence of" children even when walking in a store where children were also shopping. He stated that if the Defendant were working in his yard and neighbor children exited their home to play in their own yard, the Defendant would be in violation if he were within a close proximity and did not move away.

During redirect examination, Mr. Eisner reiterated that he personally reviewed Rule 9 with the Defendant.

Timothy Neal, a Montgomery County Sheriff's Department deputy, testified that he assisted Mr. Eisner in verifying the Defendant's residence. On June 19, 2012, the two went in separate vehicles to the Defendant's residence. Deputy Neal recalled that with him was Deputy Ranear. Deputy Neal testified that, as they were pulling up to the Defendant's address, the Defendant approached his vehicle on foot. Deputy Neal said that there were ten people present outside, some of whom were children. Some of these children, who appeared to be under ten years of age, were in the immediate area of the Defendant.

During cross-examination, Deputy Neal testified that there were at least two, but maybe three, children within fifteen to twenty feet of the Defendant. The deputy said that they allowed the Defendant to stay, but the officers annotated the verification sheet to include what they had witnessed.

Rob Ranear, a deputy with the Montgomery County Sheriff's Department, testified that he accompanied Deputy Neal and Mr. Eisner to the Defendant's residence on June 19, 2012. He said that he drove in his own patrol car and that, as he approached the residence, he did not immediately recognize the Defendant. He said, however, that the Defendant was the only person who rose from the table when the officers arrived, and he approached the officers' vehicles. Deputy Ranear said that he saw at least three children, whose ages he

3

approximated at between three and six years, close to or in contact with the Defendant. At least one of these children was seated at the table with the Defendant.

On behalf of the Defendant, Crystal Shorten testified that she lived in the residence directly next to the Defendant's residence. She said that she had three children, aged six, five, and four, with whom she and her husband lived. Ms. Shorten said that she and her family had a barbecue during which her children were jumping on a trampoline in their backyard. Ms. Shorten said that sitting at the table on one bench were the Defendant and an adult female, Leann Sparks, and, on another bench, she and her husband. The Defendant's significant other, Marcy Orange, was sitting in a chair nearby. Ms. Shorten said her five-year-old daughter was sitting next to her and her husband and was "nowhere near [the Defendant]." When her daughter finished eating, she returned to the trampoline in the backyard. Ms. Shorten estimated that, when police arrived, her daughter was a little more than five feet from the Defendant.

During cross-examination, Ms. Shorten testified that the table at which they were sitting was set up in her yard, on the driveway in between her house and the Defendant's house. She said that her other children had also eaten "[k]ind of sort of around [the table]." She conceded that the children were in and out and around the table where the Defendant was seated.

Leann Sparks testified that she lived with the Defendant and Marcy Orange at the time of this barbecue. She recalled the police arriving and said that, at the time, Crystal and Ray Shorten were on one side of the table, with their daughter seated on the same side of the table. The Defendant, Ms. Orange, and Ms. Sparks were all on the other side of the table, closest to the Defendant's house. Ms. Sparks testified that there was never a child seated next to the Defendant. Ms. Sparks said she had blonde hair at the time and was "slouched down" when she was seated next to the Defendant.

Marcy Orange testified that she is the Defendant's "significant other" and had been so for fifteen years. She said that, at the time of this incident, the Defendant and Leann Sparks were living with her. The Shorten family resided next door, and they had children in their family. The children would walk through her yard on occasion, but they were always accompanied by their parents.

Ms. Orange recounted the events during the barbecue, recalling that police arrived while they were eating. She said that Crystal and Ray Shorten were seated on a bench on one side of the table and that the Defendant and Ms. Sparks were seated on the other side. Ms. Orange said she was seated nearby in an "individual" chair. Ms. Orange testified that there was not a child seated next to the Defendant at the table. She said that the closest any child

4

ever came to him was five or six feet. The children were primarily playing on a trampoline behind the Shortens' house.

During cross-examination, Ms. Orange said she did not recall if there was a child sitting at the table eating when police arrived. Ms. Orange said the Defendant was seated next to Ms. Sparks, who was "several inches" taller than Ms. Orange, who was five feet three inches tall.

The Defendant testified about the barbecue, saying that he never talked to, touched, hugged, or played with any of the children. He further said that he never did anything to draw their attention toward him. The Defendant denied ever being seated next to a child.

The Defendant did not recall whether Mr. Eisner reviewed the rules of his supervision with him, but he said he was sure that he read those rules before he signed the paper. The Defendant testified that no one ever explained to him the rule about having "no contact with children."

During redirect examination, the Defendant stated that he was never informed that "contact" meant to "be in the presence of" children. He said he was never informed that if children were playing in the yard of the house next door that he had to leave his front yard. The Defendant reiterated that he never approached a child at the barbecue.

Based upon this evidence, the jury convicted the Defendant of violating the terms of his community supervision for life, based upon his violation of Rule 9, and the trial court sentenced him to ten days in jail, followed by six months of state probation.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to support a finding that he knowingly violated the terms of his community supervision for life. The Defendant asserts that he did not "knowingly" violate his probation because the meaning of the term "enter into contact" was "loosely described to [him] in vague terms." Further, he asserts that the term "enter into contact" infers that the Defendant engage in some sort of action coupled with the contact. He asserts that there was no evidence that he knowingly entered into contact with a child under the age of eighteen. The State counters that the evidence demonstrates that the Defendant violated Rule 9 of his specialized probation condition for sex offenders. The State notes that, by its verdict, the jury accredited the testimony of the State's witnesses, one of whom testified that the Defendant was in close contact with young children. Therefore, the State asserts, the evidence is sufficient to sustain the Defendant's conviction.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view

of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In this case, the Defendant was sentenced to community supervision for life in 2005 pursuant to Tennessee Code Annotated section 39-13-524 (2010). He was indicted for, and convicted of, violating the terms of his community supervision for life pursuant to Tennessee Code Annotated section 39-13-526 (2010). That code section states in relevant part:

> (a) It is an offense for a person to knowingly violate a condition of community supervision imposed upon the person pursuant to § 39-13-524.

> (b)(1) If the conduct that is a violation of a condition of community supervision does not constitute a criminal offense, the violation is a Class A misdemeanor

T.C.A. § 39-13-526. One of the conditions of the Defendant's community supervision was Rule 9, which stated in pertinent part, that the Defendant was required to:

> [N]ot enter into contact with any child under 18 or anyone who is unable to give consent due to mental, physical or emotional limitations unless an adult is present whom my officer and my treatment provider have approved in advance in a writing as a chaperone.

The testimony presented at the Defendant's trial included that he was informed of the rules of his community supervision for life. He agreed he read and signed those rules on at least three occasions. Those rules included the provision that he not enter into contact with any child under the age of 18. The Defendant then participated in a barbecue, during which he sat next to a young girl who was under the age of ten. We acknowledge that the Defendant offered witnesses who testified that he was on the opposite side of the table from the young girl and was never within five feet of a child, but the jury by its verdict rejected the testimony of these witnesses. The jury accredited the State's witnesses, two testifying that the Defendant was seated next to a young child. There is sufficient evidence to support that the Defendant knowingly entered into contact with the young girl in violation of the conditions of his community supervision. As such, the evidence is sufficient to support his conviction, and he is not entitled to relief on this issue.

7

### III. Conclusion

Based upon the foregoing authorities and reasoning, we conclude that the evidence is sufficient to support the Defendant's conviction.  As such, the trial court's judgment is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE